On June 19, 1945, plaintiff, Aubry, and defendant, Reynolds, entered into a contract under which Reynolds, a shoring contractor, agreed to shore and raise a building belonging to Aubry a height of 71/2 feet. Reynolds was to furnish all necessary materials, tools, labor and equipment and was to raise the house to the stipulated height from the former elevation but was not to replace the foundations. He was to allow his jacks and other equipment to remain in place without charge for thirty days after the raising of the house in order that Aubry might, within that time, have some other contractor build the necessary new foundation for the building.
The contract provided that one-half of the total price which was $575 would be paid "when property is on rigging." The balance was to be paid on "the complete performance of the work."
When the contract was signed and before the work was commenced, Aubry paid to Reynolds $300 which was a little more than one-half of the total contract price.
Reynolds moved his materials and equipment to the job and commenced work. He had placed his jacks under the building and had raised it a height of about one inch so that it was no longer resting on its original foundation, when the tenant who was occupying the property made objection to the continuance of the work and demanded that Reynolds immediately discontinue operations. Aubry, the owner, was notified and the matter was presented to the Office of Price Administration of the Federal Government. Reynolds was prevented from proceeding with the work until the matter could be arranged with the tenant and the Office of Price Administration.
According to Aubry, himself, the resulting delay was two and one-half months. The tenant was finally required to move thus it became possible for the work to be resumed.
There is controversy as to what occurred when the tenant was finally required to move and it became possible for the work to be resumed.
Aubry declares that Reynolds agreed to go ahead with the contract without any additional charge and that "he returned to the job and set the house on the blocks." Aubry then adds that Reynolds then demanded that he be allowed to retain the $300 which had already been paid him and that he be paid, in addition, the full contract price, $575 for completing the work. In other words, Aubry says that after at first agreeing to go ahead and complete the work under the original contract, Reynolds demanded that he be allowed the $300 already paid as compensation for the work done prior to the time at which it was stopped, and $575 for the work to be done after the tenant moved from the premises.
Reynolds says that he at no time agreed to return to the work; that the stoppage of the work was due to no fault of his but solely to the fault of Aubry in not arranging the matter in advance with the tenant and with the Office of Price Administration, and that when it became obvious that the work would be delayed for an unreasonable time he and Aubry agreed that he would remove his equipment, and that he might retain the $300, as payment for the work which already had been done prior to the time at which the work was stopped.
The suit was initiated by Aubry who prayed for judgment against Reynolds for $300, the amount paid in advance when the contract was executed. Reynolds denied any obligation to Aubry to return the $300, maintaining his right to retain it and, assuming the position of plaintiff in reconvention, asked for judgment against Aubry for an additional $600, contending that under the contract he was entitled to be paid 50 cents per day for each of his jacks which was retained for a longer period than thirty days, and that Aubry retained twenty-eight of his jacks at 50 cents per day from October 10, 1945 until December 30, 1945.
In the First City Court for the City of New Orleans there was judgment in favor *Page 165 
of Aubry for $300, subject to a credit of $50 which the judge a quo fixed as the value of the work which Reynolds had done prior to the stoppage of the work. The reconventional demand was dismissed.
Reynolds has appealed.
[1] It is very obvious from a reading of the record that the work was stopped solely because of the fact that Aubry, the owner, did not arrange in advance with his tenant for the abandonment of the property by the tenant in order that the work might proceed. There was no obligation in Reynolds, the contractor, to investigate this situation, and, therefore, it was certainly not his fault that the work was required to be stopped when the tenant made objection. We think it clear then that since the work was stopped through no fault of Reynolds, he was entitled to be paid and to receive at least the amount which would have been due him under the contract at that stage of the proceedings. He made no claim for damages for the breach of the contract. Under the contract, itself, he was entitled to one-half of the contract price as soon as the house was placed upon the "rigging", and all parties agree that it had been placed on the rigging at that time. Reynolds could have terminated the contract or he could have waited and agreed to go ahead with it as soon as it became possible to do so. He chose to terminate that contract. He was, therefore, entitled to the amount which was due him under the contract which was one-half of $575, or $287.50. The judgment for the return of the $300 which was paid was erroneous inasmuch as $287.50 of that amount had been earned by the contractor.
[2] When we come to consider the reconventional demand, we think it quite obvious from the evidence that when Reynolds determined that there had been so much delay that he would not continue with the original contract, he could have moved his equipment and would have, therefore, prevented the accumulation of the rental charges on his jacks. He did not do so but chose to allow the jacks to remain on the property of Aubry in the hope that he might obtain a new contract which ultimately he did not obtain. Had he removed the jacks as he might have done, there would have been no rental. Since he chose to allow them to remain on the Aubry property unnecessarily, we think that he is not entitled to rental. We conclude that he should be allowed to retain $287.50 of the original amount paid, and that he should not be permitted to collect anything on account of the rental of his jacks.
It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is amended so as to read as follows: It is ordered, adjudged and decreed that there be judgment in favor of Leon S. Aubry and against defendant, J. Reynolds, doing business as Reynolds Shoring Company in the sum of $12.50, with legal interest from June 14, 1945 until paid.
It is further ordered, adjudged and decreed that the reconventional demand of J. Reynolds, doing business as Reynolds Shoring Company, be and it is hereby dismissed. Aubry to pay costs of appeal, Reynolds to pay all other costs.
Judgment amended.